Gilmore, J.
The proceedings before the commissioners were instituted under the act of April 5, 1866, entitled an act to authorize county commissioners to construct roads on petition of a majority of resident land-owners along and adjacent to the line of said roads.” 63 Ohio L. 114.
To give the commissioners jurisdiction under that statute, it was essential that it should have been made to appear that the petition presented to them was “ signed by a majority of the land-owners resident within said *313 -county, whose lands will be assessed for the expense of the ■same.”
The mode of making this manifest, without expense to the public in any event, was: 1. By a bond, “conditioned for the. payment of the expenses of the preliminary survey and report, if the improvement shall not be finally ordered.” 2. By the report of the viewers and surveyor, who were to make a careful examination and profile of the road to be improved; and their report should have shown, first, an estimate of the expense of the improvement, and, second, the lands within two miles of the line of the road, which would be benefited thereby, and ought to be assessed for the expense of the same, together with the names of the owners of the lots of land respectively.
When the report in this case was returned, showing the ■names of the one hundred and sixty-four persons, whose lands would be benefited by the proposed improvement, the commissioners, by comparing these names with those •signed to the petition asking for the improvement, would have seen at once that a majority of those whose lands were reported for assessment to pay the expense of the contemplated improvement, had not signed the petition, and that consequently they were not authorized to order the improvement.
It appears, however, ' that the commissioners, taking a wrong view of the law in this ■ respect, had, on presentation of the petition, found the fact to be that the petition so presented did contain the names ‘of a majority of the land-owners who would be benefited by the improvement, and entered the same of record. It is needless to say that the jurisdictional fact thus prematurely found and recorded did not confer authority to make the order, and that the commissioners, in ordering the improvement to be made at the time they did, acted without legal authority. Under the subsequent legislation on this subject, which will be referred to again, the consent of a majority of the land-owners whose lands are to be assessed for such improvements, is still essential, in order to give the commissioners *314 authority to act in such cases. It follows that the proceedings of the' commissioners in the premises were void for want of authority to make the orders of which the plaintiffs complain, and, .in the absence of the curative sections and statute quoted below, they would unquestionably be entitled to the relief they ask in their petitionand,, tó the case thus made by the plaintiffs, the matters set up in the answer would not constitute a legal defense.
Before proceeding to the consideration of the equitable-defense made by the answer, it will be well to refer briefly to the subsequent legislation on this subject in order that the object of the legislature in passing the curative sections and statute quoted may be the better understood.
The act passed March 29, 1867 (S. & S. 671), entitled “ an act to authorize county commissioners to construct roads on the petition of a majority of resident landowners,” etc., was a re-enactment, with amendments and additions, of the provisions of the act of April 5, 1866, under which these proceedings were commenced. The last-named act is repealed, with the following saving and curing clauses, viz: “Provided, that such repeal shall not affect or impair any right acquired or any liability incurred under the law so repealed: Provided further, that the proceedings under this act, and the act passed April 5, 1866, herein repealed, shall not be held to be void on account of any informality or irregularity in the form of the petition, or any informality appearing in the record and proceedings of the county commissioners, or any other proceeding pertaining thereto, and the collection of taxes and assessments ordered for the payment of such improvement under this act, or the act herein repealed, shall not be enjoined or held to be void on account of any irregularity or defect in such proceedings as aforesaid.”
The act of March 81, 1868 (S. & S. 673), entitled “ an act to amend sections 1, 2, 4, 5, 6,- and 11 of an act entitled an act,” etc., passed March 29,1867. This act gives the ■commissioners power to order a view on the petition of *315 five land-owners; but when their report comes in, showing-the names of the laud-owners who will be assessed to pay the expense of the improvement, the commissioners can not proceed to order the improvement until a majority of those whose names are so reported shall have signed the petition. The sections named are repealed, with the saving and enabling clauses following, viz : “ Providedr that the repeal of said sections shall not affect any right or liability accruing or accrued, or any suit, or matter, or proceeding had or commenced under the provisions thereof; and any work commenced under said sections shall be prosecuted and completed in the same manner as-if said repeal had not been made: Provided further, that any proceedings now pending under said sections may, at any stage thereof, be made to conform to the provisions of this act.”
The act of May 9, 1868 (S. & 8. 675), entitled “ an act to amend section 5,” etc., of the act of March 31, 1868,. which amended section provides, among other things, that “if at any time after making such final order (for the improvement) the commissioners shall find that there has-been an omission of lots or lands within the territory sought to be assessed, or that there has been manifest injustice in the apportionment of taxes, . . . they are authorized to make such additions and reapportionmeu ts as they may deem just and proper.”
Then comes the curative statute passed May 13, 1868-(S. & S. 677), which reads as follows: “ That no person shall be permitted to take advantage of any error committed in any proceeding to lay out, construct, or improve any road under and by virtue of the act to-which this is supplementary, or of the act entitled “ an act to authorize county commissioners to construct roads on the petition of a majority of resident land-owners along and adjacent to the line of said roads,” passed April 5,1866, nor of any error committed by the county commissioners, or by the county auditor, or by the engineer or surveyor, or other person or persons in the proceeding to lay out, con *316 -struct, or improve any such road, nor for any informality, •error, or defect appearing in the record of such proceeding, unless the party complaining is affected thereby. But the court in which any action is now pending, or may hereafter be brought, to enjoin, reverse, or declare void the proceedings by which any such road has been laid out, constructed, or improved, or 'ordered to be laid out, constructed, or improved, or to enjoin the collection of any tax or assessment levied’or ordered to be levied for the purpose aforesaid, or of either, may, if there be manifest error in ■such proceedings affecting the rights of the plaintiff in such .action, set the same aside as to him without affecting the rights or liabilities of the other parties in interest. And .the court shall, on the final hearing, make such order in the premises as may seem equitable and just, and may order the tax assessment levied against the plaintiff to remain on the duplicate for collection, or to be again levied, in whole or in part, or may perpetually enjoin the same or any part thereof. The costs of such action, and of the proceedings had therein, shall be apportioned among the parties or paid out of the county treasury, in whole or in part, ■as justice may require and the court direct. This act shall govern actions and proceedings now pending so far as the same is applicable.”
The act took effect from its passage.
Notwithstanding this statute is retrospective in its nature, it is not in conflict with section 28, article 2, of the constitution, which provides that “the general assembly shall have no power to pass retroactive laws, or laws impairing the ■obligation of contracts, but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest ■ intention of parties and officers, by curing omissions, defects, and errors in instruments and proceedings, arising out of their want of conformity with the laws of this state.” Without saying that this statute is necessarily in conflict with the first, it is clearly in harmony with the second clause of this section. Miller v. Graham, 17 Ohio St. 1.
*317 The legislature, in which is vested all legislative power not prohibited by the constitution, had the power, therefore, to pass a curative statute retrospective in its nature,, which, like this, does not impair contracts or disturb absolute vested rights already existing, but which is intended to further the cause of right and justice by curing defects in the proceedings before the county commissioners, through which some of those who, in equity, ought to bear' a reasonable share of the burdens of making an improvement beneficial to themselves and the public, are seeking’ to avoid all responsibility, and thereby cast the burdens entirely upon others, who may derive no greater benefits, from the improvement than they do. There can be no doubt as to the intention of the legislature in passing this-statute. The mode of improving roads, as provided in the act of 1866, was a radical departure from the method prescribed by former laws on the subject. The act alluded to was itself crude and imperfect. The proceedings in question were commenced under it, and the commissioners-committed a fatal blunder in the first step they attempted to take under its provisions. The act of 1867 did not greatly improve it. And from the nature of the three acts-of 1868, which followed each other in rapid succession, it is plain that the legislature not only saw and felt the necessity of amending the defects of the prior laws on the-subject, but also the necessity of curing the defects that had occurred in proceedings everywhere, under those defective statutes. In the exercise of its plenary powers, the-legislature, in cases of this nature, could cure and render valid, by remedial retrospective statutes, that which it could have authorized ip the first instance by proper enactments. There is no doubt that the legislature could, in advance, have provided by law for the improvement of roads, by means of the very steps and proceedings that were had and taken by the parties and officers in the case under consideration, and if such had been the case, the-plaintiffs would have been bound to pay the assessments made against them. It is said in Miller v. Graham, “ The *318 remedial provisions of the statute are in fact in the nature of proceedings .de novo, in which the party on whose lands an assessment has been laid, is permitted to make every ■claim and every showing, which he might have made if the proceedings by and before the commissioners had been in all things regular, and he had been personally notified from the beginning.” These remarks are equally applicable to the statute in this case. These remedial statutes are to be so construed as most effectually to meet the beneficial end in view. In other words, they are to be liberally construed.
While it may be admitted that, in the absence of the remedial statute referred to, the facts set up in the answer would not have constituted a defense, it becomes necessary to examine the matters so set up, in order to ascertain whether, in view of the statute, they were such as constituted an equitable bar to the injunction sought by the plaintiffs. Briefly they are as follows: 1. The mistake of the commissioners, in finding from the face of the petition, that it was signed by a majority of the land-owners who would be benefited by the improvement. 2. That the first viewers failed to discharge their full duty in not including in their report .the lands of the plaintiff and others, because they did not know or believe that such lands were within two miles of the improvement; in other words, it was a mistake or omission, and there is no suggestion that the commissioners in the first, or the viewers in the last instance, did not act in perfect good faith. 8. That the viewers failed to carry out the orders of the commissioners in full. Another omission. 4. That all parties to the proceeding (a clear majority i£ true) consented to the setting aside of the report of the first viewers, and referring the matter to a new set of viewers. 5. That the lands of the plaintiffs respectively are within two miles of the road, and benefited by the improvement, and that the assessment on plaintiffs’ lands is just, equitable, and fair. 6. That the work was in progress, and three-fourths -completed, when the lands of the plaintiffs were assessed; and after they were assessed, and they had full knowledge *319 of the fact, they permitted the work to go on to completion without objection on their part.
The demurrer to the answer admits these statements to be true. We think the matters stated were such that a court of equity, under the provisions of the curative statute, had the facts stated been denied by a reply, could have proceeded to a hearing of the case, and the probability is that the first order of the court would have been to set aside the proceedings, so far as they affected the rights of the plaintiffs respectively, for manifest error therein; and this would have left them still in court, standing on their equitable rights alone, and the court, on final hearing, would have made such order in the premises as seemed equitable and just under all the circumstances that might have been made to appear on the hearing. This is what the statute contemplates. When the District Court, properly as we think, for the reasons indicated, overruled the demurrer to the answer, the plaintiffs, instead of replying to it, and trusting to the equity and justice of their claims, elected to stand by their demurrer. The District Court could not have done otherwise than it did, viz., dismiss the petition. We find no error, either in overruling the demurrer to the answer or dismissing the petition, and the judgment of the District Court is therefore affirmed.
This case-is distinguishable from that of Glenn, Treasurer, v. Waddell, 23 Ohio St. 605, in at least two respects : 1. In the case cited, the commissioners had exhausted their legal powers before the order assessing the lands of the plaintiffs was made and entered. In this ease, the lands of the plaintiffs were assessed under the same order and at the same time the lands of all others were assessed. 2. The case cited presented no equities that would bring it within the operation of the curative act of May 13, 1868. This case falls within the provisions of the act, and the decision rests upon it.

Judgment affirmed.

McIlvaine, O. J., Welch, White, and Rex, JJ., concurred.